1  Douglas J. Rovens (State Bar # 106582)
   *drovens@ssd.com*
2  Jeffrey S. Renzi (State Bar # 221963)
   *jrenzi@ssd.com*
3  SQUIRE, SANDERS & DEMPSEY L.L.P.
   555 S. Flower St., 31st Floor
4  Los Angeles, CA 90071
   Telephone:   (213) 624-2500
5  Facsimile:    (213) 623-4581

6  Attorneys for Defendant
   4ACCESS COMMUNICATIONS COMPANY
7

8                UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

11 | VAL POPESCU, an individual;              | Case No.  3:08 CV 00525 JM RBB
12 |              Plaintiff,                  | DECLARATION OF STEVEN D. DAVIS IN
                                              | SUPPORT OF DEFENDANT'S MOTION
13 |     vs.                                  | TO DISMISS FOR IMPROPER VENUE
14 | 4ACCESS COMMUNICATIONS
     COMPANY, a Delaware corporation, and
15 | DOES 1 through 10, inclusive,
16 |              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF STEVEN D. DAVIS

I, Steven D. Davis, declare as follows:

1. I am the president of 4Access Communications Company ("4Access"). I submit this declaration in support of 4Access' Motion to Dismiss for Improper Venue. The following facts are true and correct based upon my person knowledge and, if called as a witness, I could and would competently testify thereto.

2. In February 2002, 4Access entered into negotiations with Val Popescu for Mr. Popescu to serve as its Chief Technology Officer ("CTO").

3. On March 1, 2002, Mr. Popescu was hired as the CTO of 4Access.

4. Attached hereto as Exhibit "A" is a true and correct copy of the Employment Agreement (the "Employment Agreement") entered into between 4Access and Mr. Popescu.

5. The Employment Agreement was a negotiated contract between Mr. Popescu and 4Access. Various draft of the Employment Agreement were exchanged prior to the parties' execution of the Employment Agreement.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on this 24 day of April 2008 at Chicago, Illinois.

_____
Steven D. Davis

LOSANGELES/262243.3

SQUIRE, SANDERS &
DEMPSEY L.L.P.
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071

# EXHIBIT A

## Employment Agreement

This Employment Agreement (Agreement) is entered into as of February 21, 2002, between Val Popescu (Employee) and 4Access Communication Corporation (Company)(Employee and Company collectively referred to as the Parties) as follows:

### Recitals

1. Company is a Delaware corporation authorized to engage in all business lawful under the Delaware Business Corporation Act, including but not limited to designing, manufacturing, marketing, selling, maintaining and servicing communications and payment industry products..

2. Company has acquired customers and will continue to acquire customers, the relationships with whom would not be known to Employee but for his employment relationship with Company.

3. Company desires to employ Employee, and Employee desires to be employed by the Company, as Chief Technology Officer.

### Agreement

In consideration of the mutual promises, covenants and agreements herein contained, the recitals set forth above which by this reference are incorporated into this Agreement, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

**1.0 Incorporation of Recitals.** The Parties agree that the recitals to this Settlement Agreement are true and correct and represent essential considerations of the Parties in entering into his Agreement. The representations contained therein are hereby incorporated by reference into the body of this Agreement as substantive provisions and shall in all circumstances be used in interpreting this Agreement.

**2.0 Terms of Employment.** Company shall employ the Employee as a Chief Technology Officer pursuant to the terms and conditions set forth in this entire Agreement, and shall include the following:

**2.1 Duration.** Subject to prior termination pursuant to Section 3.0 hereof, the term of this Agreement shall commence on _____, 2002 and end upon the expiration of twenty-four (24) months (the Contractual Employment Period). Thereafter, Employee's employment with Company shall continue at the will of the Company (the At Will employment Period). The entire period of time in which Employee is employed by Company shall be referred to as the Employment Period.

**2.2 Duties.** During the Employment Period, Employee shall be responsible for, and perform duties associated with, the position of Chief Technology Officer and other duties as may be

directed by Company from time to time. Employee shall: (i) devote his full business time during normal business hours to the business and affairs of the Company; (ii) use his best efforts to promote the interests of the Company; and (iii) perform faithfully and efficiently his responsibilities.

**2.3 Location of Performance by Employee.** During the Employment Period, Employee shall perform his duties primarily at the Company's San Diego office, or such other locations as may be reasonably directed or permitted by Company from time to time. Employee acknowledges that the Company maintains and operates offices in other states, including Illinois and Georgia, and agrees that, if necessary and in the Company's discretion, he will travel to an out-of-state location of the Company.

**2.4 Base Salary.** During the Contractual Employment Period, the Company shall pay the Employee an annual base compensation of One Hundred Seventy-Five Thousand dollars ($175,000.00)(Base Salary) payable in accordance with the Company's normal payroll practices with such payroll deductions and withholdings as are required by law. During the At Will Employment Period, Employee's Base Salary may be increased or decreased in the discretion of the Company at any time.

**2.5 Bonus.** Employee may be entitled to receive, in addition to the annual Base Salary referenced above, an annual bonus, if any, in an amount to be determined by the Chief Executive Officer in his sole discretion.

**2.6 Vacation and Holiday Pay.** As of the effective date of this Agreement, Employee will be entitled to: (i) accrue vacation time at the rate of Three (3) weeks of paid vacation for each year of employment; and (ii) will be eligible to receive pay for Company-paid holidays. Vacation time shall accrue ratably each year and, in accordance with the Company's written vacation policy (which Company reserves the right to withdraw or modify at its discretion), any unused vacation time shall carry over or forward to the next year, notwithstanding any Company policy to the contrary. Additionally, employee must wait for 6 months from date of hire before taking vacation time or obtain consent from the company.

**2.7 Benefits.** Aside from those benefits of employment specifically described in section 2.4, 2.5 and 2.6, Employee shall be entitled to receive such health, dental, personal disability, life insurance and flexible time-off benefits to the extent provided for other senior executive employees of the Company with similar duties and work requirements and to the extent as are authorized and adopted from time to time by the Company.

**2.8 Reimbursement of Expenses.** The Company shall reimburse Employee for all reasonable and necessary expenses incurred by Employee in connection with his employment, provided that Employee submits to Company a reimbursement request within 30 days after such expense is incurred together with presentation of the receipts or substantiation therefor.

**3.0 Termination of Agreement and Employment.**

    **3.1 Termination.** During the Contractual Employment Period, Employee's employment

may be terminated only for cause as the term is defined in Section 3.2. During the At Will Employment Period, Employee's employment may be terminated at any time for cause or without cause by the Company upon fourteen (14) days written notice to Employee, or by Employee upon fourteen (14) days written notice to Company.

**3.2 Termination for cause.** Employment terminated for cause means (i) a good faith determination by the Company's Board of Directors that Employee willfully failed to follow the lawful written directions of the Board of Directors; provided that no termination for cause shall occur unless Employee has been provided with the Company's notice of intent to terminate employment for cause and Employee has had at least 14 days to cure or correct such behavior, and the Board of Directors has determined that Employee has failed to cure or correct such behavior; (ii) engagement in gross misconduct which is materially detrimental to the Company; provided that no termination for cause shall occur unless Employee has been provided with the Company's notice of intent to terminate employment for Cause and Employee has had at least 14 days to cure or correct such behavior, and the Board of Directors has determined that you failed to cure or correct such behavior; (iii) willful failure or refusal to comply in any material respect with the Company's Proprietary Information and Inventions Agreement, any other written agreement involving the Company and the Employee, or any reasonable policy of the Company where non-compliance would be materially detrimental to the Company; provided that no termination for cause shall occur unless you have been provided with the Company's notice of intent to terminate your employment for cause and have had at least 14 days to cure or correct such behavior, and the Board of Directors has determined that Employee failed to cure or correct such behavior; or (iv) commission of an unlawful or criminal act which the Board of Directors reasonably believes would reflect adversely on the Company. A termination of employment by the Company for any other reason, except Disability, or in any other circumstances will be a termination without cause.

**3.3 Death or Disability.** Employee's employment shall be terminable immediately upon Employee's death or disability. Disability is defined for purposes of this subsection as absence from the Company's full time duties with Company as a result of the Employee's incapacity due to physical or mental illness for ninety (90) days calculated on a cumulative basis during any two (2) year period from the first day of the Employee's employment with the Company. Nothing in this section is intended to violate any Illinois or federal law regarding parental or family leave policies.

**4.0 Noncompetition.** Employee agrees that during the Employment Period and for a period of eighteen (18) months thereafter, he will not, except in furtherance of his employment with the Company, without the prior written consent of the Company, either directly or indirectly operate, control, advise, be engaged by, perform any consulting services for, invest in (other than less than one percent of the outstanding stock in a publicly held corporation which is listed on the NASDAQ national market or traded over-the-counter or on a recognized securities exchange) or otherwise become associated in any capacity with, any business, company, partnership, organization, proprietorship, or other entity who or which designs, manufactures, markets, sells, maintains and/or services payment technology in competition with the Company in those geographical areas and/or market segments in which the Company conducts or has conducted

such business, or intends to conduct business, consistent with the Company's current, written business plans, during Employee's employment. As consideration for this obligation imposed on Employee, Employer agrees to pay and Employee agrees to accept the lump sum amount of one percent (1%) of Employee's base annual salary at the time of termination, the amount of which shall be paid within 45 days of the date on which Employee's employment with the Company is terminated.

**5.0 Nondisclosure.** Employee agrees at all times to hold as secret and confidential (unless disclosure is required by the Company or would be in furtherance of Employee's employment with the Company or is required pursuant to court order, subpoena in a governmental proceeding, arbitration or pursuant to other process or requirement of law) any and all knowledge, information, developments, source codes, research, customer names, financial data, manufacturing data, trade secrets, know-how and confidences of the Company or its business of which he has knowledge during the Employment Period, to the extent such matters have not previously been made public, are not thereafter made public, or do not otherwise become available to Employee from a third party not, to Employee's best knowledge, bound by any confidentiality agreement with the Company (Confidential Information). Employee acknowledges that this covenant is necessary to protect the Company. The phrase made public as used in this Agreement shall apply to matters within the domain of (a) the general public or (b) the Company's industry. Employee agrees not to use such knowledge for his own benefit or for the benefit of others or, except as provided above, disclose any of such Confidential Information without the prior written consent of the Company, which consent shall make express reference to this Agreement.

**6.0 Miscellaneous Provisions.**

    **6.1 Notices.** Any notices provided pursuant to this Agreement shall be in writing and shall be deemed given (a) if by hand delivery, upon receipt thereof; (b) if mailed, 5 days after deposit in the U.S. mail, postage paid, certified mail, return receipt requested; (c) if mailed by Express Mail or Federal Express, or other like-carrier, two (2) days after deposit therewith prepaid; or (d) if delivered by fax or e-mail, upon receipt, so long as a hard copy is also delivered by one of the other methods specified herein. Notices shall be delivered to the parties at the following locations:

    Company:    4Access Communications Corporation
                         1251 West Webster Avenue
                         Chicago, Illinois 60614

    Employee:    Val Popescu
                         8680 Miralani Drive
                         Suite 101
                         San Diego, California 92126

    Each party may change its address for purposes of this section by giving written notice of such change in the manner provided for in this section.

**6.2 Amendments.** No term of this Agreement may be amended, waived, discharged or terminated verbally, but only by an instrument in writing signed by the party against which enforcement of the amendment, waiver, discharge or termination is sought.

**6.3 Headings.** The headings in this Agreement are for convenience or reference only and shall not define or limit the provisions hereof.

**6.4 Applicable Law.** This Agreement shall be construed in accordance with and governed by the laws of the State of Illinois.

**6.5 Counterparts.** This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute but one instrument.

**6.6 Jurisdiction of Courts.** Any judicial proceedings between the parties under this Agreement shall be brought in the Circuit Court of Cook County, Illinois, or the United States District Court for the Northern District of Illinois, Eastern District.

**6.7 Parties of Interest.** All of the terms and covenants contained herein shall inure to the benefit of, and be binding upon the parties hereto, their heirs, successors and/or assigns.

**6.8 Contract Interpretation.** Any dispute resolution, with respect to interpretation of employment contract, shall result in the assessment of fees and costs in favor of the prevailing party.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement on the date first written below.

Val Popescu                          4ACCESS COMMUNICATIONS, INC.

_____                    By: _____
                                         President

Dated: 2/27/02                       Dated: 2/27/02

07

# PROOF OF SERVICE
(Pursuant to Federal Law)

The undersigned certifies and declares as follows:

I am a resident of the State of California and over 18 years of age and am not a party to this action. My business address is 555 South Flower Street, 31st Floor, Los Angeles, California 90071-2300, which is located in the county where any non-personal service described below took place.

On April 25, 2008, a copy of the following document(s):

**DECLARATION OF STEVEN D. DAVIS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE**

was served on:

Gregory P. Goonan, Esq.
The Affinity Law Group APC
600 West Broadway, Suite 400
San Diego, California 92101-3352
Telephone: (619) 446-5661
Facsimile: (619) 515-1197
ggoonan@affinity-law.com

Service was accomplished as follows.

☐ **By U.S. Mail.** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice the mail would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid of postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **By personal delivery by Beverly Hills Express Attorney Services** of the document(s) listed above to the person(s) at the address(es) set forth above.

☒ **By Electronic Means.** On the above date, I filed the above-mentioned document(s) by electronic means with the Court. As such, the Court electronically mailed such document(s) to the parties noted above, whose electronic mail address is set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on April 25, 2008, at Los Angeles, California.

s/Jeffrey S. Renzi
_____
Jeffrey S. Renzi