**4ACCESS**
COMMUNICATIONS COMPANY

January 10, 2007

Mr. Val Popescu
P. O. Box 569
Rancho Santa Fe, CA  92067

Dear Val:

After much consideration, we regret that we must terminate your employment at 4Access Communications Company (the "Company").

Although the Company has no obligation to provide you with any kind of severance package, the Company is prepared to assist you with your transition to new employment. This letter sets forth the terms of the Separation Agreement (the "Agreement") that the Company is offering to you to aid in your employment transition.

1. Separation.  Your last day of work with the Company and your employment termination date will be January 10, 2007 (the "Separation Date"). You will no longer represent to anyone that you are still an employee of the Company or any of its affiliates. You also will not apply for reemployment with the Company or any of its affiliates in the future.

2. Accrued Salary and Paid Time Off.  On the Separation Date, the Company will pay you all accrued and unpaid salary, and all accrued and unused vacation earned through the Separation Date, subject to standard payroll deductions and withholdings. You and the Company agree that the total of such amounts is (i) $94,946.81 in accrued and unpaid salary. You have taken all of vacation days. You and the Company also agree that the statue of limitations for certain portions of such accrued and unpaid salary has expired, but the Company is willing to pay such portions to assist you in your transition to new employment, subject to the terms of this Agreement and in exchange for the release provided below. You are entitled to these payments (to the extent the applicable statute of limitations has not expired) regardless of whether or not you sign this Agreement.

3. Health Insurance.  To the extent provided by the federal COBRA law or, if applicable, state insurance laws, and by the Company's current group health insurance policies, you will be eligible to continue your group health insurance benefits at your own expense. Later, you may be able to convert to an individual policy through the provider of the Company's health insurance, if you wish.

4. Other Compensation or Benefits.  You acknowledge that, except as expressly provided in this Agreement, you will not receive any additional compensation, severance or benefits after the Separation Date.

5. Expense Reimbursements.  You agree that, within ten (10) days of the Separation Date, you will submit your final documented expense reimbursement statement reflecting all business expenses you incurred through the Separation Date, if any, for which you seek

ATLANTA • CHICAGO • SAN DIEGO

One North LaSalle • Suite 2015 • Chicago, IL 60602 • Telephone: 312.223.9779 • Fax: 312.223.9559 • Internet: www.4access-comm.com

reimbursement. The Company will reimburse you for these expenses pursuant to its regular business practice.

6. <u>Return of Company Property</u>. By the Separation Date, you agree to return to the Company all Company documents (and all copies thereof) and other Company property that you have had in your possession at any time, including, but not limited to, Company files, notes, drawings, records, business plans and forecasts, financial information, specifications, computer-recorded information, tangible property (including, but not limited to, computers, credit cards, entry cards, identification badges and keys; and, any materials of any kind that contain or embody any proprietary or confidential information of the Company (and all reproductions thereof)).

7. <u>Proprietary Information Obligations</u>. Both during and after your employment you acknowledge your continuing obligations under your Proprietary Information and Inventions Agreement not to use or disclose any confidential or proprietary information of the Company without prior written authorization from a duly authorized representative of the Company.

8. <u>Confidentiality</u>. The provisions of this Agreement will be held in strictest confidence by you and the Company and will not be publicized or disclosed in any manner whatsoever; <u>provided</u>, <u>however</u>, that: (a) you may disclose this Agreement to your immediate family; (b) the parties may disclose this Agreement in confidence to their respective attorneys, accountants, auditors, tax preparers, and financial advisors; (c) the Company may disclose this Agreement as necessary to fulfill standard or legally required corporate reporting or disclosure requirements; and (d) the parties may disclose this Agreement insofar as such disclosure may be necessary to enforce its terms or as otherwise required by law. In particular, and without limitation, you agree not to disclose the terms of this Agreement to any current or former Company employee.

9. <u>Nondisparagement</u>. Both you and the Company agree not to disparage the other party, and the other party's officers, directors, employees, shareholders and agents, in any manner likely to be harmful to them or their business, business reputation or personal reputation; <u>provided</u> that, both you and the Company will respond accurately and fully to any question, inquiry or request for information when required by legal process.

10. <u>Dismissal of Lawsuit; Release of All Claims</u>. You hereby agree to take all actions necessary to dismiss Case Number GIN056734, filed by you in the Superior Court of California, County of San Diego, against the Company within five (5) business days.. Except as otherwise set forth in this Agreement, you hereby release, acquit and forever discharge the Company, and its officers, directors, agents, servants, employees, attorneys, shareholders, successors, assigns and affiliates, of and from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind and nature, in law, equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, events, acts or conduct at any time prior to and including the execution date of this Agreement, including but not limited to: all such claims and demands directly or indirectly arising out of or in any way connected with your employment with the Company or the termination of that employment; claims or demands related to salary, bonuses, commissions, stock, stock options, or any other ownership interests in the Company, vacation pay, fringe benefits, expense reimbursements, severance pay, or any

other form of compensation; claims pursuant to any federal, state or local law, statute, or cause of action including, but not limited to, the federal Civil Rights Act of 1964, as amended; the federal Americans with Disabilities Act of 1990; the federal Age Discrimination in Employment Act of 1967, as amended ("ADEA"); the California Fair Employment and Housing Act, as amended; tort law; contract law; wrongful discharge; discrimination; harassment; fraud; defamation; emotional distress; and breach of the implied covenant of good faith and fair dealing.

11. ADEA Waiver. You acknowledge that you are knowingly and voluntarily waiving and releasing any rights you may have under the ADEA, as amended. You also acknowledge that the consideration given for the waiver and release in the preceding paragraph hereof is in addition to anything of value to which you were already entitled. You further acknowledge that you have been advised by this writing, as required by the ADEA, that: (a) your waiver and release do not apply to any rights or claims that may arise after the execution date of this Agreement; (b) you have been advised hereby that you have the right to consult with an attorney prior to executing this Agreement; (c) you have twenty-one (21) days to consider this Agreement (although you may choose to voluntarily execute this Agreement earlier); (d) you have seven (7) days following the execution of this Agreement by the parties to revoke the Agreement; and (e) this Agreement will not be effective until the date upon which the revocation period has expired, which will be the eighth day after this Agreement is executed by you; provided that, the Company has also executed this Agreement by that date ("Effective Date").

12. Waiver. In granting the release herein, you understand that this Agreement includes a release of all claims known or unknown. In giving this release, which includes claims which may be unknown to you at present, you acknowledge that you have read and understand Section 1542 of the California Civil Code which reads as follows: "**A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**" You hereby expressly waive and relinquish all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to your release of any unknown or unsuspected claims you may have against the Company.

13. Breach of this Agreement. In the event that you breach any of your obligations under this Agreement or as otherwise imposed by law, the Company will be entitled to immediate return of any and all benefits paid to you under this Agreement and to obtain injunctive relief and all other relief provided by law or equity. All other duties and obligations under this Agreement, however, including, without limitation, your waivers and releases, shall remain in full force and effect.

14. Miscellaneous. This Agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and the Company with regard to this subject matter. It is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein, and it supersedes any other such promises, warranties or representations. This Agreement may not be modified or amended except in a writing signed by both you and a duly authorized officer of the Company. This Agreement will bind the heirs, personal representatives, successors and assigns of both you and the Company, and inure to the benefit of both you and the Company, their heirs, successors and assigns. If any provision of this

Agreement is determined to be invalid or unenforceable, in whole or in part, this determination will not affect any other provision of this Agreement and the provision in question will be modified by the court so as to be rendered enforceable. This Agreement will be deemed to have been entered into and will be construed and enforced in accordance with the laws of the State of California as applied to contracts made and to be performed entirely within California.

If this Agreement is acceptable to you, please sign below and return the original to me on this date. I wish you good luck in your future endeavors.

Sincerely,

4ACCESS COMMUNICATIONS COMPANY


_____
Steven Davis
President & CEO



AGREED:


_____
Val Popescu

4Access Communications Company
Final payment to Val Popescu
January 10, 2007

1) Salary due to difference between annual salary of $175,000 and paid salary of $120,000

   Period involed September 1, 2003 through March 31, 2005.

   | | | |
   |---|---|---:|
   | Difference per month | | 4,583.33 |
   | Number of months | | 19 |
   | | Total | 87,083.27 |

2) Missed payrolls in 2003

   | | | |
   |---|---|---:|
   | Period ending | 4/30/2003 | 2,000.00 |
   | | 5/15/2003 | 1,000.00 |
   | | | 3,000.00 |

3) January 1-10, 2007

   | | | |
   |---|---|---:|
   | 1/1-1/15 | 7291.67 | |
   | 1/1-1/10 | 0.667 | 4,863.54 |

   | | |
   |---|---:|
   | TOTAL gross | 94,946.81 |

**Val Popescu**
**Payroll Recap**
**Jan 10, 2007**

| | Difference $175,000 and $120,000 | Missed Payrolls in 2003 | Pay Period Jan 1-10, 2007 | Total |
|---|---|---|---|---|
| Gross | $87,083.27 | $3,000.00 | $4,863.54 | $94,946.81 |
| Soc Sec | 5,399.16 | 186.00 | 296.89 | 5,882.05 |
| Medicare | 1,262.71 | 43.50 | 69.43 | 1,375.64 |
| Fed W/H | 7,053.56 | 246.14 | 392.30 | 7,692.00 |
| State W/H | 4,065.66 | 141.88 | 226.11 | 4,433.65 |
| DBL | 500.33 | - | - | 500.33 |
| 401k | - | - | - | |
| FSA | - | - | - | |
| Dependent Care | - | - | - | |
| Insurance | | | 75.00 | 75.00 |
| Net | $68,801.85 | $2,382.48 | $3,803.81 | $74,988.14 |