# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAL POPESCU,<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>4ACCESS COMMUNICATIONS<br>COMPANY, et al.,<br><br>　　　　　　　Defendants. | CASE NO. 08 CV 0525 JM (RBB)<br><br>**ORDER DENYING MOTION TO DISMISS, TRANSFERRING CASE** |

On January 9, 2008, Plaintiff Val Popescu filed this action against Defendant 4Access Communications Co. in San Diego Superior Court. Defendant is a Delaware corporation that formerly employed Plaintiff as Chief Technology Officer. Defendant removed the case on March 20, 2008, based on the court's diversity jurisdiction. The case was low-numbered to this court on April 4, 2008. This action constitutes Plaintiff's second attempt to maintain a lawsuit against Defendant in connection with Plaintiff's former employment. On March 26, 2007, the court dismissed the first action for improper venue under Federal Rule of Civil Procedure 12(b)(3). (Popescu v. 4Access Communications, Inc., 2007 U.S. Dist. LEXIS 21822, No. 07cv0063 JM (AJB) (S.D. Cal. Mar. 26, 2007) ("Popescu I").) In the present action, the first amended complaint ("FAC") contains five claims under California law. Defendant now moves to dismiss the FAC for improper venue. The court heard oral arguments on June 6, 2008. For the reasons set forth below, the court **DENIES** the motion to dismiss and **TRANSFERS** the entire action to the United States District Court for the Northern

District of Illinois, Eastern Division.

## I. BACKGROUND

On February 24, 2002, 4Access President and CEO Steven Davis issued a written letter offering to employ Plaintiff (the "Employment Letter"). (See Decl. of G. Goonan, Exh. 1 (Employment Letter).) Plaintiff accepted the offer in writing on February 25, 2002. (Id.) On February 27, 2002, the parties signed a written agreement (the "Employment Agreement") providing for Plaintiff's employment as Chief Technology Offer. (Mot., Decl. of S. Davis, Exh. A (Employment Agreement).) The Employment Agreement provided in pertinent part that the Agreement would end after 24 months (the "Contractual Employment Period"). (Id. at ¶ 2.1.) Thereafter, Plaintiff's employment would continue at the will of Defendant (the "At-Will Employment Period"). (Id.) During the Contractual Employment Period, Defendant would pay Plaintiff an annual base salary of $175,000. (Id. at ¶ 2.4.) During the At-Will Employment Period, Defendant could increase or decrease the base salary in its discretion at any time. (Id.) The Agreement also included the following forum selection clause: "Any judicial proceedings between the parties under this Agreement shall be brought in the Circuit Court of Cook County, Illinois, or the United States District Court for the Northern District of Illinois, Eastern District."[1] (Id. at ¶ 6.6 (forum selection clause).) Plaintiff's employment lasted until termination by Defendant in January 2007.

Plaintiff asserts five claims in the FAC: (1) breach of contract caused by failure to pay wages; (2) labor supplied; (3) violation of California Labor Code § 201, et seq., due to failure to pay wages; (4) wrongful discharge in violation of public policy; and (5) breach of contract caused by failure to issue stock options.

## II. DISCUSSION

### A. Legal Standards

The court treats a motion to dismiss pursuant to a forum selection clause as a Rule 12(b)(3) motion to dismiss for improper venue. See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). When ruling on a 12(b)(3) motion, the court does not accept the allegations as true and

---

[1] The court interprets this clause as referring to the Northern District of Illinois, Eastern Division, which encompasses Cook County.

1  may consider matters outside the pleadings. Id.

2  Federal law governs the enforceability of forum selection clauses. Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." M/S Bremen v. Zapata Off-shore Co., 407 U.S. 1, 10 (1972) (internal quotation marks omitted) (enforcing parties' choice to litigate disputes in London, England); see also Pelleport Investors, Inc. v. Budco Quality Theatres, 741 F.2d 273, 279 (9th Cir. 1984) (applying Bremen rule to domestic forum selection questions). The presence of fraud, undue influence, "overweening bargaining power," or serious inconvenience to the parties makes enforcement of a forum selection clause unreasonable. Bremen, 407 U.S. at 12-13, 16-17; Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 763 (9th Cir. 1989). The party resisting dismissal must meet a "'heavy burden of proof' . . . to set aside the clause on grounds of inconvenience." Carnival Cruise Lines v. Shute, 499 U.S. 585, 595 (1990) (quoting Bremen, 407 U.S. at 17).

Both contract and tort claims may be subject to forum selection clauses, and the applicability of a forum selection clause to a tort claim "depends on whether resolution of the claim[] relates to interpretation of the contract." Manetti-Farrow, 858 F.2d at 514; see also Bender Shipbuilding & Repair Co., Inc. v. The Vessel Drive Ocean V, 123 F. Supp. 2d 1201, 1207 (S.D. Cal. 1998) (same), aff'd sub nom. Odin Shipping Ltd. v. Drive Ocean V MV, 221 F.3d 1348 (9th Cir. 2000) (unpublished).

**B.    Claims to Which the Forum Selection Clause Applies**

Defendant argues that the forum selection clause applies to all five claims in the FAC, as in Popescu I, whereas Plaintiff claims that the clause governs none of the current claims.

In Popescu I, the court found that "resolution of Plaintiff's claim for wages owed during the At-Will Employment Period 'relates to interpretation of the contract.'" Popescu I, 2007 U.S. Dist. LEXIS 21822 at *4-5 (quoting Manetti-Farrow, 858 F.2d at 514). The court reasoned that the parties' employment relationship lay at the center of the case and "flow[ed] from the [Employment Agreement]." Popescu I, 2007 U.S. Dist. LEXIS 21822 at *5. Accordingly, the court concluded that the forum selection clause must be enforced in regard to each of Plaintiff's claims. The court also

rejected Plaintiff's offer to waive his Contractual Employment Period damages: "If tort claims flowing out of a contractual relationship may be subject to forum selection clauses, Manetti-Farrow, 858 F.2d at 514, then at-will employment damages growing out of the initial Contractual Employment Period would likewise be subject to the [forum selection] clause in this case." Popescu I, 2007 U.S. Dist. LEXIS 21822 at *5 n.1.

The FAC differs from the complaint in Popescu I in two relevant ways. First, in Popescu I, the claims arose out of both the Contractual Employment Period and the At-Will Employment Period. The FAC's counterparts cover only the At-Will Employment Period. Second, the complaint in Popescu I did not contain claims for wrongful discharge or breach of contract caused by failure to issue stock options, and lacked a freestanding claim for violation of the California Labor Code. The FAC contains all three claims.

Plaintiff argues that the Employment Agreement does not govern the claims in the FAC for several reasons. Citing the distinction between the At-Will Employment Period and the entire employment period, he disputes the court's earlier conclusion that his employment during the At-Will Employment Period requires interpretation of the Employment Agreement. This argument is not persuasive. As Defendant argues in its reply, the Employment Agreement establishes the duties, salary, terms and nature of Plaintiff's employment. The Agreement provides that Plaintiff would receive a base salary of $175,000 during the Contractual Employment Period, and that Defendant may increase or decrease the base salary at its discretion at any time during the At-Will Employment Period. (Employment Agreement at ¶ 2.4.) Thus, the court must look to the Employment Agreement to determine Plaintiff's salary in connection with Plaintiff's wage claims (nos. 1 & 2) and California Labor Code claim (no. 3). Because the Agreement establishes Plaintiff's at-will status at the time of his termination, the court must also look to the Agreement to evaluate Plaintiff's claim for wrongful termination (no. 4). Contrary to Plaintiff's argument, the court cannot assess Defendant's motion in a vacuum.

As to Plaintiff's claim for breach of contract caused by failure to issue stock options (no. 5), the analysis is less clear. Plaintiff offers a conclusory argument that the court need not interpret the Employment Agreement to adjudicate the stock option claim. Defendant responds that the stock

option claim relates to the Employment Agreement because Defendant issued the stock options during Plaintiff's employment as an incentive to maximize the company's results. (Reply at 5; see also FAC at 2 ¶ 6 (Defendant granted stock options from July 2002 until June 30, 2006); Employment Letter at 1 (referring to "participation in the company stock option plan . . . to show the company's appreciation for [Plaintiff's] hard work and dedication up to this point"); Opp'n, Stock Option Grant Notices (referring to "2002 Equity Incentive Plan" and describing grants as "Incentive Stock Option[s]").) The record suggests that some of the options vested upon commencement of Plaintiff's employment and that all of the options constituted a benefit for which Plaintiff qualified irrespective of the length of his employment. This supports Plaintiff's argument that the forum selection clause does not apply to the stock option claim. On the other hand, the record does not conclusively resolve the connection between Plaintiff's employment and his stock options. In any event, the court need not decide whether the forum selection clause applies to the stock option claim because Plaintiff's counsel conceded at oral argument that, if the court granted the motion as to the other four claims, Plaintiff would prefer that the entire complaint remain intact.

Plaintiff also argues that the Employment Agreement does not govern his claims because the employment relationship during the At-Will Employment Period is governed instead by the Employment Letter. Although Plaintiff inadvertently failed to include the Employment Letter in his opposition, he supplied a copy in a later filing. Plaintiff states that the parties did not bring this letter to the court's attention in Popescu I because Popescu I focused on the Employment Agreement and the Contractual Employment Period. (Opp'n at 5-6.)

Under California law, a written contract may be modified by another written contract. Cal. Civ. Code § 1698(a); see also id. § 1698(d) (principles such as estoppel still apply). "[A]n executory written modification must meet the requirements of a valid contract," including new consideration. Motown Record Corp. v. Brockert, 160 Cal. App. 3d 123, 133 (1984). Plaintiff fails to argue or show that this rule does not apply in this case. To the contrary, the evidence before the court demonstrates that the parties intended the Employment Agreement to be a valid and binding expression of the employment terms. Most importantly, the Employment Letter explicitly contemplates that the parties would later enter into the Employment Agreement. The court therefore rejects Plaintiff's invitation

1  to disregard the Employment Agreement.

2  In sum, Plaintiff fails to persuade that the analysis in Popescu I should not apply to most of
3  the claims in the instant case. The court therefore concludes that the forum selection clause applies
4  to the claims for breach of contract caused by failure to pay wages; labor supplied; violation of
5  California Labor Code § 201, et seq., due to failure to pay wages; and wrongful discharge in violation
6  of public policy. Pursuant to Plaintiff's request that the court not bifurcate the claims, the court does
7  not decide whether the forum selection clause applies to the claim for breach of contract caused by
8  failure to issue stock options.

9  **C.    Transfer**

10  At oral argument, Plaintiff requested that, if the court determines that the forum selection
11  clause governs all claims other than the stock option claim, the court transfer the entire action to the
12  United States District Court for the Northern District of Illinois, Eastern Division. Defendant
13  similarly requested such a transfer if the court concludes that the forum selection clause applies to
14  some but not all of Plaintiff's claims. (See Reply at 5.)

15  Two statutes authorize a federal district court to transfer a case to another venue. Under 28
16  U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong
17  division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district
18  or division in which it could have been brought." See Johnson v. Payless Drug Stores, 950 F.2d 586,
19  588 (9th Cir. 1991) (decision between dismissal and transfer is discretionary). Under 28 U.S.C. §
20  1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court
21  may transfer any civil action to any other district or division where it might have been brought." See
22  Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (§ 1404(a) motion to transfer requires
23  "individualized, case-by-case consideration of convenience and fairness," in which forum-selection
24  clause is "a significant factor"); see also Jones v. GNC Franchising, Inc., 211 F.3d 495, 499 (9th Cir.
25  2000) (listing additional factors). Here, venue in this district is improper as to the first four claims and
26  may be proper as to the stock option claim. Section 1406(a) thus authorizes the court to transfer the
27  first four claims to the Northern District of Illinois, Eastern Division, and either § 1404(a) or § 1406(a)
28  authorizes the court to transfer the stock option claim to the Northern District of Illinois, Eastern

1 Division. Pursuant to the parties' requests, in light of the forum selection clause, and in the interest
2 of justice, the court orders that the entire action be transferred to the Northern District of Illinois,
3 Eastern Division.

### III.   CONCLUSION

The court concludes that the forum selection clause applies to at least the first four claims in the FAC. Rather than dismiss those four claims and allow the stock option claim possibly to proceed in this district, the court transfers the entire action to the United States District Court for the Northern District of Illinois, Eastern Division. Accordingly, the court **DENIES** the motion to dismiss.

Once this case is transferred, the Clerk of Court is instructed to close this file upon the Northern District of Illinois, Eastern Division assigning a case number to the case.

**IT IS SO ORDERED.**

DATED: June 11, 2008

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:       All parties